## PARKER v. COWELL & a.

A legacy to a society is good, if there be enough to identify the party intended, although not incorporated.

An executor who has paid-over a legacy to the officers of a society clearly indicated by the will, shall be protected although a doubt exist whether an action at law could be maintained by such society, for want of a corporate existence, to recover the legacy.

APPEAL from the decree of the court of probate disallowing the account of the appellant as an executor of the will of Eli Metcalf, who died August 3, 1835.

By his will which was proved on the first day of September 1835, he devised and bequeathed to Elizabeth Metcalf for life, the use of all his property after the payment of certain specific legacies. He then devised as follows: "I give, devise, and bequeath, all the rest and residue of my estate not otherwise herein disposed of, to the following societies, to wit: The American Home Missionary Society, The American Tract Society of Boston, and The American Education Society, to be equally divided between said societies, share and share alike, to be paid to them within one year after the decease of my said wife Elizabeth; and each of said societies to dispose of their share in a way and manner which in their judgment shall best promote the benevolent objects of said societies."

Elizabeth Metcalf, the wife of the testator named in the will, and this appellant were constituted executors and accepted the trust. Elizabeth died on the 14th day of February 1842.

Among the items controverted were sundry debts due to the estate and lost through the insolvency of the debtors, and with which the appellees sought to charge the executor as having been guilty of negligence in suffering them to remain uncollected while the debtors were solvent. Other items were charges made by the executor for the

expenses of sundry journeys performed in the discharge of his trust. Another item was for money laid out upon the farm. Another was a credit which the executor appellant claimed for $600, paid by him in 1842 to the treasurer of The Home Missionary Society in pursuance of the will. This society had never been incorporated, and no demand of the legacy had been served upon the executor, although there had been correspondence between its officers and him on the subject of it, as to its probable amount and time of payment.

The appellees were the heirs of Eli Metcalf.

*George Wood,* of New-York, (with whom were *Edwards* and *Handerson*) for the appellant. When a legacy is given to a voluntary society or a corporation antecedently existing and created for charitable purposes, it is always held that the legacy is given for the charitable purposes for which such society or corporation is created. See *Waller* v. *Childs,* Ambler 526 ; 1 Simons and Stewart 40.

In the case of *Burr's Executors* v. *Smith,* 7 Vt., where the whole subject of charitable uses was pretty fully discussed, there was a legacy to this very society, and no question was made that this was not a charitable institution.

Some doubt and difficulty has been thrown upon this subject by the decision of the United States Supreme Court in the case of the *Baptist Association* v. *Hart's Executors,* 4 Wheaton. That decision was made at a time when this doctrine was very imperfectly understood in the United States, and has been the source of much error.

This legacy would not be good as an ordinary bequest to a voluntary society. It may be proper in the first place that I should explain the distinction between such a bequest and this one to charitable uses, in order to show the principle upon which this bequest is supported.

A charitable use is an equitable interest. It exists and

is protected in a court of equity; though it is recognized incidentally in a court of law, as was done in *Porter's Case*, 1 Co. 39.

Regularly, there are three parties in the case of a charitable use : 1. The trustee, or party holding the legal estate ; 2. The managers of the charity, or party managing and distributing the charitable bounty ; 3. The *cestui que trusts*, or objects of the charitable bounty.

These objects are always more or less uncertain, and from the very nature of public charity must be. They may be classified in the charity. In the case of the *Sailor's Snug Harbor* for instance, a person to partake of the bounty must answer a certain description or come within a certain class of poor sailors. But within the range of that class, it is altogether uncertain and indefinite what individuals may hereafter at any time enjoy that bounty.

Now here is the great discriminating feature between these public uses and ordinary private uses or trusts in equity, and interests at common law.

In the two latter cases the persons to take the interest must be certain, or so described that they may be reduced to certainty. In the cases of charitable or public uses they must in the nature of things be vague and indefinite, and that code of laws must be rude and imperfect, which does not accommodate itself to the nature and fitness of things.

Attending to the above distinction, we shall have no difficulty in construing the bequests under consideration.

This American Home Missionary Society takes no beneficial interest in these bequests. They are the managers of them only, the mere almoners of the charitable bounty. As managers of this charity are they sufficient ?

I will venture to say that in nine tenths of the charitable donations in Great Britain, the funds are under the management of voluntary associations. In the schemes formed by chancellors for the management of charities,

they are usually confided to some voluntary association. *Moggridge* v. *Thackwell*, 7 Ves. 36.

Lastly, in the case of charities where no trustee is created, a court will not suffer the charity otherwise good to fail for the want of a trustee. This is an invariable rule in the case of all trust interests, and applies with full force to charitable bequests. But we need not invoke the aid of the rule in this case, because the executors are trustees of the personal estate to distribute it among the parties entitled. *Rutland* v. *Rutland*, 2 P. W. 211 ; 1 Atk. 458 ; 1 Sch. & Lef. 202 ; *Bartlett* v. *King*, 12 Mass. 543.

If this had been an ordinary bequest, the society to take at all, must have taken the beneficial interest, which by law they could not do. But considering it to be a charitable society, and the bequest a charitable one, the society take no beneficial interest, but are the mere managers of the charitable bounty, which is allowable under the law of charitable uses, and if this distinction is attended to, the nature of the bequest will be perfectly understood, and its validity placed on tenable grounds.

This case steers entirely clear of the difficulty raised in the case of the *Baptist Association* v. *Hart's Executors*, because being personal estate the executors are trustees. But I am unwilling to rest the case here. I contend that if there be no trustee but the disposition is otherwise good as a charitable use, the court will never allow the charity to fail for want of a trustee, but will raise one or convert the heir into one.

This whole subject was fully discussed in the case referred to in 7 Vermont Reports, which decision has been largely used in subsequent cases without making special reference to it. In the argument several passages were quoted from Domat, showing that the elements of this doctrine of charitable uses were derived from the civil law. Also a number of cases accruing prior to the Stat-

Parker *v.* Cowell.

utes of Elizabeth, showing of course that the doctrine was introduced into England prior to their passage.

That these trusts to charitable uses will be sustained where no trustee is created, the following authorities were cited. *Pawlet* v. *Clarke,* 9 Cranch 292 ; *Beaty* v. *Kurtz,* 2 Peters 566. That in charities as in other trusts, the court will raise a trustee or convert the heir into one. *Moggridge* v. *Thackwell,* 7 Ves. 36 ; *Attorney-General* v. *Lady Downing,* Amb. 571 ; 3 Pet. 119.

All these positions were fully sustained by the court in that case ; and the chief justice said, that if there should be a devise of real estate directly to the societies, they would direct it to be sold and the proceeds paid over ; and in the case of personal estate, if no particular person should be named to take, they would direct it to be paid to the treasurer for the time being. But in that case the will having directed the money to be paid to the treasurer, the court ordered it to be paid to the person who was treasurer at the testator's death.

I have said that this subject of charitable uses was somewhat obscured by the case of *Baptist Association* v. *Hart ;* but the same subject has again recently come before the Supreme Court in the case of *Vidal* v. *Girard's Executors,* 2 Howard 128. The opinion of the court as delivered by Mr. Justice Story reviews this case of the *Baptist Association* v. *Hart,* and states that the doubts about charitable uses there raised are entirely removed by late and more satisfactory sources of information. The court adopt the doctrines established by the United States Court held at Philadelphia by Justices Baldwin and Hopkinson in the case of *Sarah Zane's Will,* where a legacy was sustained which was given directly to a voluntary association for a pious and charitable use, which case was exactly like the present. Several legacies of a similar character have within a few years been sustained in New-York, but I think it scarcely necessary to cite them, since the case of

the *Baptist Association* v. *Hart* has been put to sleep in the very court in which it was decided.

This great common law doctrine of charity, founded as it is on the very nature of charity, must exist every where and always where the common law and Christianity prevail. If adequate remedies do not exist in some of the States to enforce it, it is no objection to the law. These remedies may be created and applied from time to time as exigencies may arise.

*Vose*, for the appellees, cited 24 Pick. 146 ; *Union Society* v. *Candia*, 2 N. H. 21.

GILCHRIST, J.*   It appears that the testator Eli Metcalf made his will, which was proved on the 1st of September 1835, by which he gave to his wife the use of his property during her life subject to certain specific legacies, and all the rest and residue of his estate to the American Home Missionary Society, the American Tract Society of Boston, and the American Education Society, share and share alike, to be paid to them within one year from the decease of his wife Elizabeth ; each of those societies to dispose of its share in a way and manner it may deem best for the promotion of its benevolent object.

There is no ambiguity in the words of the devise. The intention of the testator is as apparent as language can render it, and it is not disputed that there is a Home Missionary Society, with its place of business in New-York, with regular officers to receive and disburse money in the prosecution of the objects of the association, and that these objects are of the character and description denoted by the name of the society.

It also appears that the executor did within one year from the death of Elizabeth Metcalf the wife of the testator, pay the sum of $600 in question to an officer of

* PARKER, C. J., did not sit.

the society regularly appointed to receive it, and that he has taken a receipt for the same.

But it is contended by the heirs at law, that there was no devisee competent to take, because the society indicated by the terms of the will as such was not incorporated, and because not incorporated was incapable of maintaining an action at law for the recovery of the legacy.

Laying aside for the present the question whether the society for want of a corporate character and existence would meet with insuperable obstacles in maintaining a suit for the recovery of the legacy, and laying aside other inquiries which have been urged relating to the powers of this court, in view of the eleemosynary character of the legacy, to carry into effect the plain intent of the donor, and whether the society is or is not to be considered as a trustee for the administration of the legacy for the uses contemplated in its organization, let us consider whether there is any objection to its competency to take the legacy if it had been given for the sole use of the society, and whether the intention of the testator as indicated by the clear and unequivocal terms of the will, have not been fully executed by the appellant in paying over the money to the society's servants.

If the purposes of any voluntary association be not illegal, and if it have a distinct and recognized existence, an individuality so that the person of the devisee is not uncertain, what objection is there to the competency of such an association to receive and hold a legacy given for its own use, without any liability to account any where for the disposition it makes of the legacy ? Suppose a devise to a library association, a lyceum, an engine company, a musical company, or a mercantile copartnership having a recognized existence and consisting of a definite number of individuals, and a payment of the legacy in compliance with the devise, it is difficult to see who there is that can establish a better right than the devisee to

hold the property. A person competent to make a will disposes of his property to individuals associated together for a purpose not immoral, to be by them used according to their own will and for their own purposes, and they receive it, we see no reason why they may not retain it.

Suppose the number was indefinite, of those who composed the society; fluctuating, dependent upon the payment of subscriptions or compliance with other conditions, but united under a well known name, and possessing agents and officers accustomed to conduct the affairs of the association, we see no reason why upon the receipt of money, the person receiving it should not hold it for those who according to the laws and usages of the society are entitled to the enjoyment or to the disposal of it. What these rules and usages are, and whether they are such as ascertain and protect the individual rights of the members of the association, or provide for the effective management of its property by the vote of majorities or by trustees or other agents, or whether, as is not unfrequently the case, the control of the common property and the particular interest of each member in the property are left somewhat unsettled, it is not the business of the executor to inquire, if there is sufficient in the will to satisfy him that in paying over the money he is executing the intent of the testator as therein expressed.

That the executor did so in the present case we see no room to doubt, and therefore conclude that he was entitled to an allowance of the sum for which he claimed credit in his account as having been paid over to the American Home Missionary Society.

This renders it unnecessary to consider the other controverted items, since by the decision upon the principal question, the appellees appear to have no interest in the fund in the hands of the executor.

The decree of the probate court must therefore be reversed, and the cause remitted for further proceedings.